**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Armida Ramos,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | No. CV-21-00503-PHX-MTL<br><br>**ORDER** |

At issue is the denial of Plaintiff Armida Ramos's Application for Social Security Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial and an Opening Brief (Doc. 19, "Pl. Br."). Defendant SSA Commissioner submitted a Response Brief (Doc. 22, "Def. Br.") and Plaintiff filed a Reply Brief (Doc. 25, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 15, "R.") and now affirms.

**I.    BACKGROUND**

Plaintiff filed an application for disability insurance benefits on June 21, 2018, for a period of disability beginning on June 15, 2013. (R. at 17.) She later amended her onset date to March 18, 2017, after an unfavorable decision determining she was not disabled from her initial alleged onset date through March 17, 2017. (R. at 18, 24.) Her claim was denied on September 8, 2018, and again upon reconsideration on February 26, 2019. (R. at 17.) Plaintiff appeared before an Administrative Law Judge ("ALJ") for a hearing

regarding her claim on June 16, 2020, which the ALJ denied on August 10, 2020. (R. at 14, 17.) On January 21, 2021, the Appeals Council denied Plaintiff's Request for Review and adopted the ALJ's decision as the agency's final decision. (R. at 1–3.)

The Court will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: osteoarthritic degenerative changes of the knees, hands and wrists, hypertension, obesity, depression and anxiety. (R. at 20.) The ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from the alleged disability onset date through the date last insured. (R. at 32.) The ALJ also found that Plaintiff did "not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 20.) The ALJ then made the following determination with respect to Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] had the [RFC] to perform light work . . . She can frequently climb ramps and stairs, and occasionally climb ladders, ropes or scaffolds. She can frequently balance, stoop, kneel, crouch, and crawl. She is able to perform frequent handling and fingering, bilaterally and is able to perform simple work (i.e., simple work-related decisions and instructions) with no public contact and few changes in the work setting.

(R. at 22.) Based on Plaintiff's RFC, the ALJ found that Plaintiff was able to perform "jobs that existed in significant numbers in the national economy." (R. at 31.) Accordingly, the ALJ determined that Plaintiff was not disabled during the relevant period. (R. at 32.)

## II. LEGAL STANDARD

In deciding whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the ALJ's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). To determine whether substantial evidence supports a decision,

the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* "Substantial evidence" is a deferential standard, which requires "more than a mere scintilla but less than a preponderance." *Id.* "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four, where she assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step. There, she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III.   DISCUSSION

Plaintiff raises two issues for the Court's consideration. First, Plaintiff argues that the ALJ committed materially harmful error by rejecting the assessments of two of Plaintiff's treating physicians, Dr. Paluc and Dr. Morgan. (Pl. Br. at 12–19.) Second, Plaintiff argues that the ALJ erred in rejecting her symptom testimony. (*Id.* at 19–24.)

///

### A.     Medical Opinions

Plaintiff first argues that the ALJ erred by rejecting, without specific and legitimate reasons, the assessments of Dr. Paluc and Dr. Morgan. Plaintiff asserts their opinions are supported by substantial evidence when the record is reviewed as a whole, especially considering that the vocational expert concluded that the "limitations assessed by both providers would preclude the ability to sustain work." (*Id.* at 12.)

For claims filed before March 17, 2017, ALJs were required to give "substantial weight" to medical professionals who treated the claimant personally on an ongoing basis. *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022). Underneath these "treating" physicians were "examining" physicians, who "examine the claimant but do not have an ongoing relationship with her." *Id.* The third tier, entitled to the least amount of weight, were those "physicians who only review the record." *Id.* Under this prior administrative scheme, if the ALJ rejected the treating or examining physician's opinion, she "must provide 'clear and convincing reasons,' if the opinion is uncontradicted by other evidence, or 'specific and legitimate reasons' otherwise, and the reasons must be supported by substantial evidence." *Id.* (quoting *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017)).

For claims filed after March 17, 2017, however, ALJs are no longer constrained by these limitations. 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). Additionally, the ALJ is not required to state precisely why she rejected a certain medical opinion, even from a treating physician. *Id.* § 404.1520c(b)(1) ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually."). "Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations." *Woods*, 32 F.4th at 792. Thus, for claims filed after March 17, 2017, the Ninth Circuit has made clear that the "specific and legitimate" standard for disregarding treating physicians' opinions does not

apply. *Id.* Even if the ALJ is not required to give special deference to certain opinions, she must still provide an explanation, supported by substantial evidence, of why she disregarded that opinion. *Id.*

Under this new scheme, the most important factors that the ALJ considers are "supportability" and "consistency." 20 C.F.R. § 404.1520c(b)(2). Supportability is defined as how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical findings." *Id.* § 404.1520c(c)(1). The ALJ should also treat opinions as more persuasive if they are more consistent with "other medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c)(2). Lastly, the ALJ can also consider, to a lesser degree, other factors, such as the length and purpose of the treatment relationship, the kinds of examinations performed, and whether the medical source actually examined the claimant. *Woods*, 32 F.4th at 792.

### 1. Dr. Morgan's Opinion

The ALJ considered two of Dr. Morgan's opinions: one dated September 23, 2019, and the other undated (R. at 514–15, 565–66). The ALJ found the two opinions to be both internally inconsistent and inconsistent with other medical opinions that covered the relevant time period. (R. at 28–29.) For example, the ALJ highlighted that the September 2019 opinion generally showed that the psychiatric symptoms were more severe across the board than the later, undated, opinion. (R. at 27–28, 514–15, 565–66.) Additionally, the September opinion stated that the psychiatric symptoms were not "exacerbated by a general medical condition," while the undated opinion stated the exact opposite conclusion. (R. at 515, 566.)

Dr. Morgan did not begin treating Plaintiff until April 17, 2018, over three months after Plaintiff's date last insured, yet she still opined that Plaintiff had been severely limited for the last five years. (R. at 28, 515.) Given that Dr. Morgan did not have the opportunity to view Plaintiff until this time period, the ALJ concluded that Dr. Morgan relied too heavily on Plaintiff's subjective reports. (R. at 28.) Since Dr. Morgan provided no other

1  explanation of how she determined Plaintiff had been severely limited for the last five
2  years, and that Plaintiff was found to routinely over-exaggerate her symptoms, the ALJ did
3  not err in discounting purely subjective results. (Def. Br. at 10; *see also* R. at 377)
4  ("[Plaintiff's] performance indicated that she responded to the test by significantly over
5  reporting and/or exaggerated psychological distress. . . . [S]he is not considered to be a
6  reliable historian or self-reporter of her emotional or psychological distress."). Plaintiff
7  seems to argue that, because her own over-reporting in the above-mentioned test rendered
8  the results of that test invalid, the Court should disregard *all* results of the very test,
9  including the fact that she over-exaggerated her ailments. (Pl. Br. at 16–17.) This circular
10 logic is unpersuasive: the fact that Plaintiff over-reported cannot be disregarded simply
11 because the exaggerated *results* were invalid. Because of Dr. Morgan's inconsistencies and
12 reliance on Plaintiff's subjective reports, the ALJ did not err in rejecting her testimony.

### 2. Dr. Paluc's Opinion

14 Dr. Paluc treated Plaintiff from January to May 2017 (R. at 500), then again from
15 November 2017 to present, but the administrative record only contains medical records for
16 November 2017 to present. (R. at 471–501.) Dr. Paluc represented in February 2019 that
17 Plaintiff is "unable to work in any capacity; and, given the chronicity, severity and lack of
18 response to treatment, this is unlikely to change in the future." (R. at 500.)

19 Dr. Paluc's noted lack of any improvement is unsupported by the medical records
20 during that timeframe, however. For instance, on October 18, 2018, Dr. Morgan wrote that
21 "[Plaintiff] does feel that the medications are helpful in that she feels better than she did
22 before she started taking them." (R. at 560.) Additionally, on May 30, 2019, Dr. Morgan
23 stated that Plaintiff was feeling "good," which was an improvement from the previous
24 visits. (R. at 554.) That same day, Dr. Morgan stated that Plaintiff "believes that her anxiety
25 is less intense, her panic attacks are less intense and she is having them about once a day
26 at this point." (R. at 554.) Moreover, considering that the "substantial evidence" threshold
27 requires the Court to uphold the ALJ's decision "[w]here evidence is susceptible to more
28 than one rational interpretation," there is no basis for overturning the ALJ's decision here.

*Burch*, 400 F.3d at 679; *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (the ALJ can properly discount inconsistent medical opinion testimony by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings"). Thus, the Court finds no error in the ALJ's determination that Dr. Paluc's assessment was unsupported by, and inconsistent with, the record as a whole. 20 C.F.R. § 404.1520c(b)(2) ("[S]upportability . . . and consistency . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . to be.").

### B. Symptom Testimony

Plaintiff argues that the ALJ did not provide sufficient reasons for discounting her testimony, so she is entitled to a remand for an award of benefits. (Pl. Br. at 19–24.) Defendant argues that the ALJ's findings were sufficiently specific and supported by substantial evidence in the record. (Def. Br. at 13–16.)

The ALJ must determine whether the Plaintiff has shown sufficient "objective medical evidence of an impairment that 'could reasonably be expected to produce the pain or symptoms alleged.'" *Tristan v. Comm'r of Soc. Sec. Admin.*, No. CV-20-02240-PHX-DWL, 2022 WL 1707953, at *6 (D. Ariz. May 27, 2022) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)). When reviewing this objective medical testimony, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch*, 400 F.3d at 680. However, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" by "providing specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015).

In her function report, Plaintiff stated that she suffers from anxiety, depression, agoraphobia, and lower back pain, which all prevent her from "functioning like a regular human being." (R. at 284–92.) She also claimed that she hallucinates and will not seek treatment for her lower back because she is afraid that surgery will lead to paralysis. (R. at 290–91.) Additionally, she stated in her function report that she cannot drive a car, as "the

lanes shrink right before [her] eyes." (R. at 287.) In her Social Security hearing, she testified that "if I step outside, my body starts trembling, shaking, and it's something that I just cannot control." (R. at 54.)

The ALJ found that Plaintiff's "impairments adversely affect her ability to function to a degree." (R. at 26.) The ALJ further concluded that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent" with the other evidence in the record. (R. at 24.) The ALJ then provided a list of discrepancies between Plaintiff's self-reported symptoms and the objective evidence: (1) although Plaintiff stated that she shook uncontrollably whenever she left home (R. at 54), no medical provider in the record ever actually observed this behavior, despite her being out of the home for all medical visits (R. at 26); (2) despite the fact that Plaintiff said in her function report on August 21, 2018, that she never drives (R. at 287), the treatment notes from Dr. Paluc on May 5, 2017, show that Plaintiff drove herself to the appointment (R. at 390); (3) Plaintiff expressed a fear of leaving the house on all occasions, but she attended doctor appointments, shopped for groceries—albeit with difficulty—and discussed taking a vacation to Canada with her spouse (R. at 26); (4) Plaintiff said that she had immense pain in her hands, yet would not take any prescribed medication (R. at 62), and the rheumatologist was only able to opine that she had "mild" to "moderate" inflammation and effusion in her hands (R. at 403); (5) Plaintiff's mental state was noted in multiple medical visits to be improving (R. at 26); and (6) Plaintiff showed no effort to improve her back ailments via surgery, which is inconsistent with purportedly suffering from tremendous pain. (R. at 24.)

The Court finds that the ALJ did not err. The ALJ pointed out multiple instances where Plaintiff's self-reported symptoms, both mental and physical, were in direct contravention to the objective medical record. As to physical symptoms, the ALJ made clear that she did not believe the treatment history supported the intense pain reported by the Plaintiff for her hands and back. (R. at 24.) As to mental conditions, while the ALJ did not completely discount Plaintiff's testimony, she discounted the severity of Plaintiff's

agoraphobia, anxiety, and depression based on objective medical evidence that Plaintiff tends to over-report symptoms. (R. at 26.) Additionally, the ALJ noted that no treating physician was able to objectively corroborate the uncontrollable shaking or fearfulness which Plaintiff reported upon leaving the house (R. at 26), but rather, many observed that Plaintiff appeared "neat and appropriate and her behavior and attitude [were] within normal limits." (R. at 25, 390–94.)

Considering that the ALJ has set forth multiple "specific, clear, and convincing reasons" for discounting Plaintiff's symptom testimony, the Court detects no error. *Colvin*, 806 F.3d at 488–89. The ALJ did not discount Plaintiff's testimony solely on a lack of supporting evidence, but rather because the medical record is replete with contradictory statements, from a physician or occasionally Plaintiff herself. When medical evidence is subject to multiple reasonable interpretations, then the ALJ's decision must be upheld. *Burch*, 400 F.3d at 679.

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** affirming the August 10, 2020 decision of the Administrative Law Judge (R. at 17–32), as upheld by the Appeals Council on January 21, 2021 (R. at 1–3).

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly and close this case.

Dated this 8th day of July, 2022.

Michael T. Liburdi
United States District Judge